# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| JOSE FERNANDO COLON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CV406-277 |
| | ) | |
| FRED BURNETTE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is Jose Fernando Colon's 28 U.S.C. § 2254 petition. Doc. 1. He challenges his May 2, 1996 conviction and forty-year sentence for aggravated child molestation, statutory rape, and furnishing alcohol to minors.

Colon originally raised thirteen § 2254 grounds. Doc. 1. Now there are only three. A brief procedural recapitulation explains why. In *Colon v. Burnett*, No. CV406-040 (S.D. Ga. Petition filed Feb. 21, 2006), the State filed the state court record, including Colon's trial transcript, *id.*, doc. 13, before this Court dismissed that petition for lack of exhaustion. *Id.*, docs. 14, 19, 20; 2006 WL 2864414 (S.D. Ga. Oct. 4,

2006). Colon then re-filed his petition with exhausted claims, CV406-277, doc. 1, but the State did not re-file the state-court records into that case. Instead, it left them in CV406-040; both cases have been on the same docket and thus the records from each have always been "mouse-click accessible." The undersigned ruled against Colon in a Report and Recommendation (R&R). *Id.*, doc. 14, *adopted,* doc. 19; *Colon v. Burnett*, 2008 WL 766342 (S.D. Ga. Mar 20, 2008) (unpublished).

Colon appealed. This Court denied him a Certificate of Appealability, doc. 12, but the Eleventh Circuit then granted him one on its own. 317 F. App'x 922, 923 (11th Cir. 2009). It limited its COA to three issues that ultimately led that court to vacate this Court's judgment and remand the case: the CV406-277 R&R failed to cite to the record exhibits, and thus failed to demonstrate that this Court "reviewed the transcript of Colon's trial." CV406-277, doc. 47 at 6; 317 F. App'x 922 (as such issues required review of state trial record, the record on appeal was inadequate to permit meaningful review by court of appeals and it was unclear whether the district court had a copy of the state-court record and thus consulted the transcript before it ruled on the petition).

As explained in a post-remand R&R, the Court *always* had a copy of those exhibits, and they in fact had been consulted. They simply had not been filed in this (CV406-277) case because they remained easily accessed via the CV406-040 file. CV406-277, doc. 49. Nevertheless, neither the pre- nor post-remand R&R explicitly cited to the state court transcripts. Concluding that the post-remand R&R did "not adequately address the Eleventh Circuit's concerns," the district judge rejected it. Doc. 55 at 2. He also directed the State to file the same records in the CV406-277 file. Finally, "[o]ut of an abundance of caution," he directed this Court to "review all three issues in accordance with the Eleventh Circuit's Mandate." *Id.* at 3 (footnote omitted).

A finality issue preliminarily arises here. While the Eleventh Circuit did not explicitly say so,[1] the remainder of the Court's second R&R and judgment (which reached 13 of Colon's claims on the merits,

---

[1] Noting that "Colon raises three issues that require the district court to review the state trial record," 317 F. App'x at 924, that court decided to "vacate the denial of Colon's petition *on these three issues* and remand for reconsideration in the light of the state court transcript." *Id.* at 923 (emphasis added). That court did not retain jurisdiction over the remaining ten issues and issue a limited remand to this Court to reach the three issues.

It's COA-screening, however, is tantamount to Colon having *only* raised three issues on appeal. Otherwise, litigants like Colon could litigate piecemeal merely by pointing to the very COA gatekeeping/issue-winnowing mechanism that Congress concocted to *limit* the "endless appeals" decried by the public in habeas cases. The other ten issues, then, thus fetch finality treatment. *See infra* n. 2.

CV406-277, doc. 14), is now binding upon Colon, and thus not re-litigatable. Hence, the 10 claims that the Eleventh Circuit winnowed out via the COA process are, given the ban against piecemeal litigation, now subject to claim preclusion. *See generally* 50 C.J.S. (*Judgments*) § 1064 (June 2009));[2] *In re Fowlkes*, 326 F.3d 542, 550 (4th Cir. 2003) (concurrence).

## I. BACKGROUND

"[C]olon [,then age 25,[3]] had an illicit sexual relationship with four minor girls, twelve and thirteen years of age. He also gave these girls

---

[2] It is claim, rather than issue preclusion, that applies here:

"Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it *should have been* advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar." *Migra v. Warren City School District Board of Education*, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1 (citations omitted). *See also* 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402.

*Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp.*, 878 F.2d 1360, 1366 n. 6 (11th Cir. 1987) (emphasis added). Put another way, Colon must raise all issues in one proceeding, including any appeals. He cannot raise some and reserve others for a later (second petition or appeal) some other day, even if he thinks up a new legal theory on which base them. *See* generally, 18 WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. 2d § 4411 (*Claim Preclusion--Different Sources of Law*) (2009). Having raised only 3 issues on his appeal of this Court's last R&R, as adopted and appealed, he cannot litigate the remaining 10 some other day.

[3] Doc. 59-3, Tr. Vol. 1 at 291.

alcohol to drink. Each of the girls testified as to the sexual acts Colon committed on them or on the other girls in their presence. Two condoms containing Colon's spermatozoa were recovered from a crime scene based on information from the victims." *Colon v. State*, 275 Ga. App. 73, 74 (2005) (footnote added). A jury found him "guilty of five counts of aggravated child molestation, four counts of statutory rape, and four counts of furnishing alcohol to a minor." *Id.* at 73; doc. 59-11 (Tr. Vol. IV at 137-38).[4]

---

[4] Paper transcripts and materials from the state trial and appellate court have been scanned into the Court's electronic docket and thus can be cited by either the original paper transcript page or the pagination of this Court's CM/ECF docketing system (which electronically prints transient pagination at the top of each scanned-in page).

The paper transcripts here -- because of the Court's computer-memory space limitations -- were scanned in but broken into segments (hence. doc. 59-1, 59-2, etc.) and at first the CM/ECF's top-of-scanned-page "electronic pagination" aligns with the "paper pagination," but it then diverges because CM/ECF pagination restarts at "1" for each succeeding segment of pages.

Here, then, the Court will first cite to each *transcript's* CM/ECF document number, then the paper transcript's original pagination: doc. 59-2, Trial Transcript, Volume I, pp. 1-141 (hereafter, "Tr. Vol. 1 at 1-141"); doc. 59-3, Tr. Vol. I at 142-310; doc. 59-4, Tr. Vol. I at 311-342; doc. 59-5, Tr. Vol. II at 1-148; doc. 59-6, Tr. Vol. II at 149-316; doc. 59-7, Tr. Vol. II at 317-326; doc. 59-8, Tr. Vol. III at 1-152; doc. 59-9 Tr. Vol. III at 153-360; doc. 59-10, Tr. Vol. IV at 1-129; doc. 59-11, Tr. Vol. IV at 130-163; doc. 59-12 (unpaginated trial court exhibits); doc. 59-13 (Colon's Georgia Court of Appeals brief and part of the State's response brief); doc. 59-14 (the remainder of the State's response brief and the appeal court's decision).

Finally, for motions and briefs the Court is citing CM/ECF "screen-page" pagination.

Following that conviction, Colon filed several motions for a new trial, then filed a direct appeal. The trial court denied his motions for a new trial, doc. 1, and the state court of appeals affirmed both his conviction and sentence. *Colon*, 275 Ga. App. at 84. His federal habeas procedural history having been recapitulated above, the remaining issues now are whether:

(1) the liability-phase admission of victim impact evidence violated Colon's right to due process;

(2) the trial court erred when it instructed the jury that it could find Colon guilty of aggravated child molestation if the act of molestation "physically injure[d] the child" or "involve[d] an act of sodomy" even though Colon was indicted only for the latter act;

(3) his trial counsel acted ineffectively when on cross-examination he asked a detective whether the victims' statements were credible.

317 F. App'x. at 924.

## II.  **STANDARD OF REVIEW**

### A.  **AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."

*Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 693 (2002) (AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."); *see Peterka v. McNeil*, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "greatly circumscribed and highly deferential to the state courts") (citation omitted); *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.") (citations omitted).  These restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Carroll v. Secretary, DOC, FL Atty. Gen.*, ___ F.3d ___, 2009 WL 2092309 at * 9 (11th Cir. July 17, 2009).

The "threshold question" under § 2254(d)(1) is whether the habeas petitioner is seeking to apply a rule of law that was clearly established at the time his state court conviction became final. *Williams*, 529 U.S. at 390. Since the statute expressly provides that only pronouncements "by the Supreme Court of the United States" qualify as "clearly established Federal law," 28 U.S.C. § 2254(d)(1), a federal habeas court may not look to "the case law of the lower federal courts" in determining what federal law is "clearly established." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). Further, the statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. These "holdings -- the exclusive touchstone for clearly established federal law -- must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). Unless a prior Supreme Court decision "squarely addresses" the issue presented in the habeas case, *Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 746 (2008), or establishes a legal principle that "clearly extend[s]" to the

conduct at issue in that case, then it cannot be said that the law is clearly established under AEDPA. *Id.* at 745; *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) ("this Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."); *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). Thus, "federal courts may no longer extract clearly established law from the general legal principles developed in factually distinct contexts." *House*, 527 F.3d at 1017. If the federal habeas court makes a threshold determination that the law was not clearly established at the time the state court issued its decision, then that finding is dispositive in the § 2254(d)(1) analysis, and there is no need for the Court to assess whether the state court's decision conflicts with controlling United States Supreme Court authority *Id.*

But where the Supreme Court has decided the issue addressed by the state court, the federal habeas court must determine whether the state court's decision is "contrary to" or involves an "unreasonable application" of the controlling precedent. These § 2254(d)(1) clauses have independent meaning and furnish separate bases for reviewing a

state court's decisions.  *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 404-05; *Putnam*, 268 F.3d at 1241 (11th Cir. 2001).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13.  In contrast, a state court decision involves an "unreasonable application" of clearly established federal law where it correctly identifies the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. *Id.* at 407-08, 413.  Thus, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Instead, the state court's application of Supreme Court precedent must be "objectively unreasonable." *Id.* at 409; *Waddington v. Sarausad*, 129 S.Ct. 823, 831 (2009); *Bell*, 535 U.S. at 694.  That presents "a substantially higher threshold" than the pre-AEDPA standard. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal courts also must presume state court factual findings to be correct unless they are rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007). Such deference does not apply, however, to mixed determinations of law and fact. *Parker*, 244 F.3d at 836.

Finally, a state court's decision rejecting a constitutional claim on the merits is entitled to deference even if the decision is summary in nature and offers no discussion of the court's reasoning. *Blankenship v. Hall*, 542 F.3d 1253, 1271 (11th Cir. 2008) (State habeas court's summary rejection of petitioner's claim of ineffective assistance of counsel was "adjudication on the merits" and, thus, was entitled to deference under AEDPA; court recognized that petitioner had raised a constitutional claim of ineffective assistance of counsel, and rejected the claim on non-procedural grounds); *Wright v. Moore*, 278 F.3d 1245, 1253-54 (11th Cir. 2002) (two-sentence opinion affirming defendant's conviction constituted a rejection of his claim on the merits so as to

warrant deference); *Parker*, 331 F.3d at 776 ("the summary nature of [the] decision does not lessen the deference that it is due").

## B. Ineffective Assistance of Counsel

Ineffective assistance of counsel (IAC) claims are governed by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), where the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*; *Knowles*, 129 S. Ct. at 1422 (a reasonable probability is a probability sufficient to undermine confidence in the outcome).

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of

professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

Finally, where a state court has applied *Strickland* (explicitly or through legal equivalent state case law), the § 2254 habeas petitioner bears the burden of showing that its application of the *Strickland* standard was unreasonable. *Blankenship*, 542 F.3d at 1271 at n. 4.

# III. <u>ANALYSIS</u>

## A. Victim Impact Evidence

Colon's first issue -- whether the liability-phase admission of victim impact evidence violated his right to due process -- requires this Court to "determine whether an evidentiary error occurred and, if so, whether admission of the evidence so infused the trial with unfairness as to deny due process of law. *Felker v. Turpin*, 83 F.3d 1303, 1311-12 (11th Cir.1996) (*quoting Lisenba v. California*, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941)); *see* [*Ferguson v. Culliver*, 527 F.3d 1144, 1148-49 (11th Cir. 2008)] (discussing *Stewart v. Erwin*, 503 F.3d 488 (6th Cir.2007))." *Colon,* 317 F. App'x. at 924 (quotes omitted).

At trial Colon essentially deployed a "Gary Dotson" defense.[5] He thus defended on the ground that: he had no sex with the victims; the victims lied to their parents for being "out" without permission; the victims lied to the police "to get back at him" for this or that, etc. *See*

---

[5]  Convicted in 1979 of rape and aggravated kidnapping, Dotson's sentence was commuted in 1985 after the victim publicly recanted. She "feared she had become pregnant after having consensual sex with her boyfriend, [so she] made a rape allegation as a plausible explanation to tell her foster parents." http://en.wikipedia.org/wiki/Gary_Dotson (site last visited Sep. 1, 2009). He would become the "second person to be exonerated of a criminal conviction by DNA evidence." *Id.* His accuser apologized on national television and in her "Forgive Me" book. *See* http://www.amazon.com/Forgive-Me-C-Webb/dp/0425094367 (site last visited Sep. 1, 2009).

doc. 59-2, Tr. Vol. 1 at 95-101 (defense opening argument that there was no forensic evidence, only the word of the four young female victims who accused Colon to cover for their absence from home, etc.); *id.* at 130 (eliciting from police prosecution witness that rape kits yielded no forensic evidence against Colon); *id.* at 132 (establishing through the same witness that the victims had not been interviewed by the police until 5 days after the events, so "they [i.e., the victims] had five days to think about it and talk about it and discuss it, didn't they? . . . . A. Don't know, sir."); *id.* at 134 (questioning same witness about how the girls had lied to their parents about going out at night); *id.* at 137-39, 210 (same, about how the girls entered Colon's apartment, without him there, and were found by their searchers, smoking cigarettes in his bed); doc. 59-3, Tr. Vol. I at 147-48 (same, about the girls lying to their parents); *id.* at 153-55 (no forensic link between the girls and used condoms, found at the scene of alleged sexual intercourse with at least one victim, from which DNA established that the semen found in the condoms came from Colon); *id.* at 158 (local gas station where girls claimed Colon bought wine or wine coolers for them in fact never sold wine coolers); *id.* at 164

(demanding of same witness whether he could believe that four girls would suddenly "just go with Mr. Colon here and have all kind of intercourse with him, all kind of sexual -- oral intercourse in the presence of each other, no kind of lights down or a little romancing or nothing, and you believe that?"); *id.* at 174 (one victim, on direct, admitted that she had lied to her grandmother about her whereabouts when in fact she went to Colon's apartment); *id.* at 184-85 (same -- out without permission or parental knowledge); *id.* at 192 (counsel questioned a victim whether she started staying out late at night because she had just found out that she had been adopted); *id.* at 193 (counsel established through that victim that she was the oldest of the four victims and that none of them would stay home as demanded by their parents or parental figures); *id.* at 195-96 (asked her whether she met with the police on December 11, 1994 but did not tell them of her sex with Colon until December 16, 2004); *id.* at 196-97 (that at trial she was now testifying about events that transpired two years earlier and had told the prosecutor "I don't know" in response to many questions on direct); *id.* at 199 (to a victim: "Q. So y'all agreed that y'all were going to lie to your parents that night and go to

[Colon's] apartment?  A.  Yes."); *id.* at 120 (defense counsel got her to admit that she told police that Colon bought the victims wine coolers from a gas station that did not sell them); *id.* at 201-02 (he asked her why she would have intercourse in a "junky bathroom" when he had a "nice big bedroom" nearby; she replied that she did not know); *id.* at 202-03 (after establishing that she had a boyfriend at the time, "Why would you just all of a sudden pick out a man like this to go to his apartment to have sexual intercourse with him?  A.  I don't know."); *id.* at 206-07 (established that the victim had lied to a girlfriend that she had "smoked a joint" with another male at some point); *id.* at 289-90 (cross-examined another victim regarding whether she had told another man, and also her mother, that she made up her accusations to "get back at" Colon); *id.* (same question regarding her mother); *id.* at 299 (got another victim to admit that she'd lied to her mother about visiting Colon's apartment); doc. 59-5, Tr. Vol. II at 71-78 (defense questioned police witness about Colon's missing apartment-mate, who had some involvements with the girls but had left town, was now in jail on a misdemeanor charge, and perhaps had been threatened by the prosecutor not to bond out lest he be arrested, so

that the prosecutor could retain easy access to him); *id.* at 94-100 (crossed state lab witness about lack of "rape-kit" forensics linking Colon to victims); *id.* at 118-19 (state lab witness opining that DNA found in retrieved condoms was Colon's); *id.* at 124-25 (crossed that witness, who conceded the condoms could have been use at two different times); *id.* at 126 (witness conceded she did not find any male/female secretions on the condoms); *id.* at 128 (also conceded that the condoms showed no connection between Colon and any particular female); *id.* at 151-52 (cross-examined victim Amanda Collins's grandmother over the possibility that Amanda, at the time of the alleged offenses, was upset over having then recently learned that she had been adopted); *id.* at 169-171 (further crossed her over whether she knew other males were with her granddaughter and the other victims on a night when the girls had gone missing, that the girls later got wet in the rain while hanging around "down by the railroad tracks" with two other males, and that the girls later broke into Colon's apartment that night while he was not there, stripped off their wet clothes and were later found in his bed together, without him); *id.* at 207-09 (cross-examined Colon's former apartment-mate

whether it was he who furnished the victims with pornographic films and had sex with one of them); *id.* at 211 (elicited from him that "the girls lied all the time"); *id.* at 219-20 (tried to shake him on whether he actually witnessed Colon having intercourse with one of the victims); *id.* at 241-42 (crossed a victim's older sister for failing to remove her younger sister -- one of the victims -- from Colon's apartment when he exhibited pornographic films to them prior to the alleged offenses); *id.* at 244-45 (got her to admit that she at first thought her little sister lied about Colon having sex with her); *id.* at 281-83 (crossed a state investigative witness who took the victims' statements about whether the victims had related that two other males had been with them on the night they were missing and later found in Colon's apartment); *id.* at 283-84 (crossed the same witness about whether the victims were lying about having sex with Colon because they did not want to get in trouble for being out all night); *id.* at 300-31 (crossed another victim, got her to admit that no "rape-kit" forensics were collected from her to prove she had sex with Colon); *id.* at 303-307 (also got her to admit that she and the other victims hid from family and the police while at some railroad tracks, got wet in

the rain, and let themselves into Colon's apartment while he was not there, only to be later found by parents/guardians); doc. 59-10, Tr. Vol. IV at 24-55 (defense closing emphasizing date-of-incident and other inconsistencies/discrepancies, the lack of "condom forensics," etc., to further Colon's "Dotson" defense that the female victims fabricated their claims against him).

Thus, Colon put witness credibility in issue, not to mention the victims' sexual predilections. The State responded by calling, among others, victim Amanda Collins, who recounted the various sexual episodes she and her female co-victims had with Colon. Doc. 59-2, Tr. Vol. I at 165-186. At one point the prosecutor asked her:

Q. Amanda, did you receive counseling as a result of these events?

A. Yes.

Q. And what happened to you there?

A. I received some counseling from Tidelands [a mental health facility] and I went to Charter [also a mental health facility].

Q. And why did you go to Charter?

A. My grandmother thought that I needed help and I also wanted to go.

Q. Have you ever -- Amanda, have you ever tried to commit suicide?

[Defense objection]

Q. Amanda, have you ever tried to commit suicide?

A. Yes.  I have had thoughts about it, but I never really tried.

*Id.* at 187-88.

Amanda's grandmother corroborated that Amanda became depressed and harbored thoughts of suicide.  Doc. 59-5, Tr. Vol. II at 149-151 (recounting that Amanda Collins "began to have emotional problems and a week prior to her hospitalization, she came into my husband and my bedroom and got in the middle of our bed and she went hysterical and she screamed and she screamed").  Defense counsel objected, unsuccessfully, on relevancy grounds.  *Id.* at 149-150.  The grandmother further testified that Amanda was upset about "Jose Colon."  *Id.* at 150.  A case worker then went to see Amanda at school "and said we need to put Amanda in the hospital."  *Id.* at 151.  She stayed there for nearly a month.  *Id.*

Colon asserts that Georgia and federal law forbid such victim-impact evidence during the guilt/innocence phase of a criminal trial.  Again, because this is a state evidentiary issue, the Court can only determine whether the admission of such impact testimony "so infused

the trial with unfairness as to deny due process of law." *Colon,* 317 F. App'x. at 924. The state appellate court concluded that Colon's earlier attack on the victim's credibility and mental stability opened the door for the state to rehabilitate the victim with testimony that she did not suffer from depression or suicidal thoughts until after her illegal interactions with Colon. *Colon*, 275 Ga. App. at 73 ("The record shows that Colon attacked the credibility and mental stability of this victim. However, the state is permitted to rehabilitate a witness whose credibility has been attacked.") (footnote omitted).

Put another way, the prosecution put up its "mental health" evidence because it made Amanda Collins more credible (i.e., people do not typically get depressed or upset over things that never happened to them but instead they fabricated out of whole cloth). Colon opened that door through his Dotson ("total fabrication") defense.

The state appellate court "thoroughly reviewed" the testimony, *Colon*, 275 Ga. App. at 75, and its ruling is not inconsistent with federal precedent. Colon, for that matter, bears the burden under § 2254 of

showing § 2254(d)-level error.[6] *Blankenship*, 542 F.3d at 1270. He has failed to do that; at most he raises a general claim that the state appellate court "contradicts [its] own case law decision." He does not state *which* "case law decision" has been contradicted. Doc. 1 at 14-5; *see also* doc. 13-2 at 22 (arguing, in his brief, that the State violated his due process and equal protection rights because the state appellate court went "against their own state law that favors the petitioner.").[7] Because Colon has failed to show entitlement to any § 2254 relief on these grounds, this first claim must be denied.

## B. Jury Instruction Claim

---

[6] "It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." Thus, under 28 U.S.C. § 2254(d)(1) and (2), he may obtain § 2254 relief only if *he* demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)." *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[7] Conclusory claims fail as a matter of law. *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Gaddis v. United States*, 2009 WL 1269234 at * 7 (S.D.Ga. Feb 23, 2009) (unpublished).

Colon cites O.C.G.A. § 16-6-4(c)[8] for his next claim -- that the trial court gave his jury an improper jury instruction "when the indictment only alleged that the crime had been committed in only one way." Doc. 13-2 at 8; *see also* doc. 59-10, Tr. Vol. IV at 104. This is a rehash of the claim he presented to the state appellate court: "Colon alleges the trial court erred in charging OCGA § 16-6-4(c) in its entirety when the indictment only alleged that the crime of aggravated child molestation had been committed in one way. Specifically, Colon contends the indictment only charged aggravated child molestation involving an act of

---

[8]    Under that provision, "[a] person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act *physically injures* the child *or* involves an *act of sodomy*. O.C.G.A. § 16-6-4(c) (emphasis added). This provision was unaltered by 2006 and 2009 legislative amendments. *See id.* ("HISTORICAL AND STATUTORY NOTES"); 2006 Georgia Laws Act 571 (H.B. 1059) ("SECTION 11"). In contrast, § 16-6-4(a) (simple, or non-aggravated child molestation) only requires non-physical-contact based attempts to sexually stimulate or arouse a child:

(a) A person commits the offense of child molestation when such person:

(1) Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person; or

(2) By means of an electronic device, transmits images of a person engaging in, inducing, or otherwise participating in any immoral or indecent act to a child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.

O.C.G.A. 16-6-4(a).

sodomy, not involving physical injury to the child." *Colon*, 275 Ga.App. at 79.

That court found harmless error. *Id*. at 79-80 (Jury instruction on offense of aggravated child molestation which referenced all ways such crime could be committed was not overly broad, despite fact that defendant was only charged with aggravated child molestation involving act of sodomy, not involving physical injury to child, in absence of any reasonable probability that jury convicted defendant of committing such offense in manner not charged in indictment; jury was properly instructed on presumption of innocence and state's burden of proof, was directed to consider case one count or charge at a time, and had indictment with them for reference during deliberations).

Colon's claim fails here. Under state law, even if the instant instruction is seen as requiring the prosecution to have proven physical injury, mere sexual contact may suffice. *See Stillwell v. State*, 294 Ga. App. 805, 805 (2008) (Conviction for aggravated child molestation was supported by evidence including victim's statements and testimony that defendant disrobed, placed his penis in victim's mouth, and "told her to

lick it").[9]  That may not seem fair to Colon, but in *this* forum he must

show more.  In fact, federal habeas law places an

> especially heavy burden on a defendant who, like [Colon], seeks to show constitutional error from a jury instruction that quotes a state statute. Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation. Rather, the defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.

*Waddington*, 129 S. Ct. at 831 (quotes and cites omitted).  Furthermore,

> the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Because it is not enough that there is some *slight possibility* that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. . . .

*Id.* (quotes and cites omitted; emphasis added); *see also Yates v. Tennis*,

2009 WL 2485371 at * 8 (W.D. Pa. Aug. 7, 2009) (unpublished) ("Jury

instructions that are allegedly defective only under state law do not rise

to the level of a fundamental due process claim in habeas corpus"); *see*

---

[9]  The Georgia appellate court has not been consistent on that score.  *See, e.g.*, *Williams v. State*, 291 Ga. App. 173, 174 (2008) ("Only the aggravated child molestation charge *required* the State to prove physical injury (for example, the painful intercourse)" (emphasis added)).  In any event "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

*also California v. Roy*, 519 U.S. 2, 5-6 (1996) (an error in the instruction that defines the crime -- a failure to inform the jury that it had to find that defendant, convicted of aiding another's murder, had the "knowledge [and] intent or purpose of committing, encouraging, or facilitating" the confederate's crime -- was only a "trial error," and not the "structural" sort that defies analysis by harmless error standards).[10]

Here Colon cannot even show the insufficient "slight possibility" that the jury might have misapplied the jury instruction provided to it. *Waddington*, 129 S. Ct. at 831. The entire trial, after all, proceeded on evidence that Colon used no force and inflicted no physical injury (only sexual pleasure) upon his under-aged victims, for the victims uniformly testified that they were never coerced, repeatedly received oral sex from him and not vice versa, and even went to his apartment and let themselves in when he was not there. Given the court's charge and the evidence that preceded it, the jury in substance was instructed to find him guilty of aggravated child molestation only upon proof beyond a

---

[10]  There are a couple of layers of "deference" analysis that federal habeas courts must undertake when a state court applies a harmless error standard, or something close to it. *See, e.g. Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009) (If the state court has conducted a harmless-error analysis, the federal habeas court must decide whether that analysis was a reasonable application of the harmless error standard under § 2254(d)(1)).

reasonable doubt that Colon engaged in sodomy (oral sex) with children. That sodomy-only showing is sufficient under state law to support an aggravated child molestation charge. *See supra* n. 9.

True, the better practice would have been for the trial court to prune the "physical injury" phrase from the charge, but its failure to do so cannot be said to have rendered Colon's trial fundamentally unfair. *Cf. United States v. Hensel*, 711 F.2d 1000, 1005 (11th Cir. 1983) ("When it is clear an element was not in dispute, and the transcript of the trial indicates sufficient evidence that the element was met, no prejudice results from the failure to remove the undisputed element from the jury."). Hence, this claim, too, must be denied.

## C. Ineffective Assistance

Before the state appellate court Colon claimed the trial court erred in denying his motion for new trial on ineffective assistance of counsel (IAC) grounds -- that his trial counsel was ineffective because he asked a detective on cross-examination if he believed the victims' statements. The record shows that defense counsel was attempting to show the victims' lack of credibility and thus asked the detective if his opinion would change "if it was shown as absolute fact" that the victims had lied about

Colon buying them wine and wine coolers at a specific gas station. Doc. 59-3, Tr. Vol I at 158. The detective responded: "Perhaps the girls were confused on the location, but I do believe the statements of the girls." *Id.* Defense counsel then asked, "You believe the statement of the girls even over the BP station owners?" And the detective answered, "Yes, sir. I've spoken with the girls. I do believe them." *Id.* at 159.

Applying the state-law equivalent of the *Strickland* standard, the appellate court did "not find that defense counsel's cross-examination resulted in ineffective assistance of counsel." *Colon*, 275 Ga.App. at 82. That court reasoned: "Here, the record shows that defense counsel's cross-examination attempted to demonstrate inconsistencies in the victims' testimony and, thereby, was a result of trial strategy." *Id.*

This Court agrees. The record shows that for much of counsel's questioning of this police witness (Randy Coleman, a police investigator), doc. 59-2, Vol. 1 at 102, he sought to show that the victims were liars and thus not credible. *Id.* at 128-159. That was, at bottom, the *essence* of Colon's "Gary Dotson" defense that their testimony was all one big fabrication. Colon thus cannot show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d

1326, 1333 (11th Cir. 2008). As the state court's decision is not an unreasonable application of established federal law, this claim, too, must be denied.

Accordingly, the Court should **DENY** the petition. Doc. 1.

**SO REPORTED AND RECOMMENDED** this ___21st___ day September, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**